FOURNET, Chief Justice.
 

 The plaintiff, Dr. Winston Churchill Holman, is appealing from the judgment of the district court refusing to modify the alimony award granted his former wife, Mrs. Freddie Earle Newsome Holman, for the support of their minor son, Winston Churchill Holman II, by reducing the same from $200 to $60 a month.
 

 It appears from the record in this case (as well as from other records that are in this court by reason of former appearances of these parties here), that Dr. Holman, who married the defendant in 1943, instituted suit for separation against her in January of 1948, charging cruel and outrageous treatment, the defendant, then residing in the family home, being awarded alimony pendente lite of $300 a month for the support of herself and the child. The plaintiff was successful in his suit, but the defendant, in the judgment rendered April 14, 1948, was granted custody of the child and alimony of $200 a month, the family home having been sold in the meanwhile and the plaintiff • offering no objection. (The trial judge explains this was for the support of the child alone, since he was under the impression the defendant’s right to alimony fell with her suit.) On June 14, 1948, the day this judgment was final (defendant having applied for a rehearing), the defendant appealed suspensively from that part granting the plaintiff the separation, and the plaintiff appealed suspensively from that part granting the defendant alimony.
 

 The effect of the plaintiff’s suspensive appeal being to deprive the defendant of the award of $200 a month for the sustenance of the child during the pendency of the appeal, the defendant ruled the plaintiff into court to show cause why he should not be held in contempt for his failure to continue the payment of the alimony pendente lite of $300 a month. After the trial judge
 
 *141
 
 dismissed this rule on the ground that the award of alimony pendente lite was modified and superseded by the judgment of April 14, 1948, granting the separation and fixing the alimony for the child at $200, and after the Supreme Court refused to review this ruling under writs sought on behalf of Mrs. Holman, the parties, on December 28, 1948, entered into a written agreement in which it was stipulated that the respective appeals taken by them would be dismissed and the plaintiff would, until April 15, 1949 (the date on which it was thought the suit for divorce could be instituted), continue paying alimony of $300 a month, the amount fixed for alimony pendente lite and $100 more than the amount fixed in the judgment of April 14, 1948. It was further stipulated that from April 15, 1949, the defendant would “no longer be entitled to any alimony whatsoever and that the alimony payable on behalf of Winston Churchill Holman, II, shall be set and fixed by the First District Court, Caddo Parish, Louisiana.” The plaintiff and defendant, by entering into this agreement, relinquished whatever chance they may have had of having this alimony reduced or increased by the higher court. In addition, the defendant by-passed her hope of securing alimony for herself in. the event the higher court reversed the judgment of separation in favor of the plaintiff.
 

 Actually, the plaintiff could not legally institute his divorce proceedings in April, as contemplated, because the judgment’ of separation had not been final until June 14, 1948, and when he tendered Mrs. Holman the sum of $60 on May 1, 1949, after the expiration date stipulated in the agreement of December 29, 1948, she immediately sought to have the alimony award fixed under the judgment of April 14, 1948, and which was then in full force and effect by reason of the plaintiff’s dismissal of his suspensive appeal, increased from $200 to $300, setting out in her rule the various changes she felt warranted such an increase, these being, substantially, that the family home had been sold and she had been forced to set up a home for the minor child and herself in Dallas, Texas; that she had been prevented from working to make a living for herself because of the illness of the child, by reason of which illness, also, the living expenses had increased; and that the income of Dr. Holman had increased. The trial judge, instead of acceding to this request, reduced the alimony for the support of the child to $150 a month, effective from May 15, 1949, the reason for the reduction of $50 a month being the inclusion in the defendant’s estimate of kindergarten tuition in this amount although it was established the child was not then attending school. From this judgment also- Dr. Holman appealed suspensively.
 

 With matters thus, the plaintiff, on June 15, 1949, just one month later, petitioned for a final divorce, which was granted. In the divorce judgment the trial judge fixed the alimony for the support of the minor
 
 *143
 
 child at $200, despite the fact that in his petition Dr. Holman said the question of alimony was not at issue since it had just been previously fixed by the court at $150 a month, this action by the trial judge being prompted by an agreement on the plaintiff’s part to pay $200 in exchange for the de■fendant’s promise, not to appeal from the judgment. The plaintiff again appealed suspensively from the alimony award.
 

 Dr. Holman remarried around the first of August and left on a three-week honeymoon. On September 27, 1949, approximately a month after his return from his honeymoon and three months after the agreement to pay alimony of $200, he petitioned the court to have the amount reduced from $200 to $60. He took this appeal when his request was refused.
 

 From the foregoing it is obvious that the plaintiff paid,the defendant alimony of $300 a month from the institution of the separation suit in January of 1948 until the rendition of the judgment on April 14, 1948, granting the separation and fixing the alimony at $200, and that also, by agreement, he continued to pay alimony on the basis of $300 a month until April 15, 1949. It is also' obvious that despite the fact the court in May of 1949 fixed the alimony at $150, the parties, again by agreement, increased this amount to $200, and that for this reason the judge fixed this amount in the judgment of divorce.
 

 Plaintiff’s contention, three months later, is that he is entitled to have this amount reduced to $60 because “conditions have changed to such an extent” since that time that a decrease is warranted. He also makes it plain in his petition that at the time he entered into the agreement with his wife, he had no intention of keeping his promise to pay her $200 a month. He alleges he only abandoned his suspensive appeal and his chance to have the higher court reduce and adjust this alimony because his wife also threatened to appeal and in “the hope of having same adjusted by this type of action.” (He overlooks the fact, of course, that in taking an appeal his wife was doing nothing more than that which she was entitled to do under the law, and that in relinquishing her right to appeal, she gave up her chance of having the alimony increased by the higher court.)
 

 We are impressed with the patience, fairness, and impartiality with which the trial judge has sought to solve this legal tangle in all of its many ramifications, as reflected by the painstaking written reasons he has given for all of his rulings; there are some ten in all. We are also convinced that throughout he has been prompted solely by a desire to advance the best interests of this small child in the light of the ability of the mother and the father to care for him in the manner to which he is entitled by reason of his station in life. We would, therefore, go more thoroughly into these reasons if it were not for the fact that the only issue before us is whether the condition of these parties so changed between
 
 *145
 
 June 28, 1949 (when the award was fixed at $200 in accordance with the agreement between the plaintiff and defendant), and September 27, 1949 (when the plaintiff sought the reduction), that a reduction is warranted under the provisions of Article 232 of the Revised Civil Code which are that “When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part the discharge from or reduction of the alimony may be sued for and granted.”
 

 On this issue the finding of the trial judge, which is supported by the record, is that the needs of the child remain the same. The plaintiff offered no evidence to prove his son’s needs are any less. He has contented himself with itemizing what he thinks are amounts sufficient to cover the cost of the child’s food, clothing, laundry, entertainment, and incidental expenses. They total $60. Significantly, in this computation, no provision is made for the living quarters of the child, for his education, or for his care and supervision during the day while the defendant is at work (it is conceded she has no other income and must make her own living), although lodging and education are items specifically mentioned in Article 230 of the Revised Civil Code, cited in brief of the plaintiff with approval and emphasis, as being among those necessities that must be considered in awarding alimony. Our appreciation of the present economic situation is that it is doubtful this small boy could even be boarded with strangers for the sum of $60 a month, and this, of course, would not include his clothing, entertainment, education, medical expenses, and incidentals, to say nothing of the fact that if he were boarded with strangers he would be deprived of the enjoyment of a home of his own and the companionship of those who love him.
 

 The only change in the child’s ‘ circumstances between June of 1949 and the trial of this case in the early part of 1950 was that he had been taken to Oklahoma during the Christmas holidays for a visit with the defendant’s mother, and had been left there because the defendant’s attendance at this trial was necessary. This, of course, was only a temporary change and can have no effect on the issue here. ;
 

 In support of his contention that he is presently unable to pay the alimony award of $200 a month, Dr. Holman states he has incurred great additional expense (1) in connection with the opening of a new clinic, (2) in connection with his remarriage, and (3) in connection with this long and involved divorce proceeding.
 

 At the time Dr. Holman instituted the separation proceedings in January of 1948, he was a physician and member of the Boyce Clinic in Shreveport, Louisiana, the clinic operated by the uncle of the defendant. At that time he was making in the neighborhood of $1,000 and $1,100 a month and his expenses were around $200 and $300 in so far as his practice was concerned. He
 
 *147
 
 continued to work with the Boyce Clinic until April of 1949, at which time he opened a clinic his own. In connection with this clinic he incurred expenses for equipment on which 'he was still paying at the time he agreed to the award of $200 and also at the time he sought a reduction of this, amount to $60.
 

 Dr. Holman admitted his gross income from his clinic in April of 1949) the month it was opened, was $551.50, and that this gradually- increased until in July he collected $2,263.50. The only month in which there was any appreciable drop was August of 1949, and during that month, even though he was away on his honeymoon for three weeks, his collections amounted to $1,051. In June of 1949, when he agreed to pay the $200 alimony, his income was $1,690, and in September, when he petitioned for the reduction, his income was $1,625.50. On the witness stand he said the December income was just slightly under $2,000. He seeks to offset the increase in his income from what it was in April of 1948 and in the latter part of 1949 by showing that his operating expenses in 1948 were only $200 or $300 a month while during the latter part of 1949 the expenses of his clinic were $975 a month and his fixed personal expenses — payments on a bank note, on a car, and alimony of $200— amounted to $414, or a total of $1,389. However, he overlooks the fact that we are not here concerned with the difference in his business expenses in April of 1948, when the alimony of $200 was fixed in the
 
 separation
 
 suit, and these same expenses at the time the reduction was sought in September of 1949, but, instead, with the conditions existing in June of 1949, when the alimony of $200 was fixed in the
 
 divorce
 
 action, and the conditions existing when the reduction was sought three months later. It is obvious, of course, that according to his own figures and admissions, his fixed expenses were the same during June, July, August, and September, 1949, while, as the trial judge so correctly points out in his written reasons for judgment, “the only change in plaintiff’s condition is that his income 'has increased instead of diminishing.”
 

 There are other factors that emphasize the correctness of our conclusion that the plaintiff is not entitled to a reduction at this time. In his separation suit he agreed to pay whatever amount the court might allow for the support of the child and the trial judge says that in his brief at that time he “passed over the question of alimony by conceding $200 (the amount finally fixed by the court) was ample.” Yet Dr. Holman immediately took a suspensive appeal from this judgment, not only relieving himself of the obligation to -pay any alimony to this child during the pendency of the appeal, but also leaving the defendant without any means to care for him during this time. He thus compelled his former wife to go to court for relief. While the matter was being thrashed out in court, Dr. Holman agreed in writing to continue the alimony of $300 a month until an award could be
 
 *149
 
 fixed by the court in the divorce action. Although he found he could not institute divorce proceedings until June, he refused to either pay this $300 until the court could fix the amount in the divorce proceedings, or to pay the $200 award fixed in the separation judgment, and, instead, tendered the sum of $60, an amount he concluded was ample for the needs of his child, without any regard to his ability to pay, the needs of the child, or the ability of the defendant to contribute thereto, all factors that must, under the law, be taken into consideration. Article 231 of the Revised Civil Code. His action again compelled the defendant to resort to the court. And by seeking to escape from paying the $200 he agreed to pay in order that he might secure a quick divorce, he, only three months after this award was fixed, again brings the defendant into court on the question of alimony.
 

 We feel, therefore, that any additional expense the plaintiff has incurred by reason of this protracted litigation is directly attributable to Dr. Holman’s own actions and his failure to live up to his agreements, to say nothing of the fact that the defendant has also been subjected.to these additional legal expenses.
 

 The other expenses incurred by the plaintiff were, of course, occasioned by the very marriage to facilitate which he promised to pay the defendant alimony of $200 a month, which promise induced the defendant to forego her’ right to have the matter reviewed in this court.
 

 Added to all of these is the further fact that there must be some degree of permanency in the plaintiff’s income from which an approximate average may be struck before this court can 'intelligently pass on the amount of alimony he is obligated to pay, and, by asking for a reconsideration of this question only three short months after the award was fixed at $200, Dr. Holman makes it impossible for such an average to be computed.
 

 The argument that the plaintiff and defendant are equally obligated under the law to contribute to the support and education of their child and that the plaintiff is, therefore, only liable for half of the needed amount, would be discussed more fully if this case were before us to fix the alimony as an original proposition, instead of for the purpose of determining whether there .has been such a change in the condition of these parties that a disturbance of the $200 award is justified, and were it not for the further fact that the record discloses the defendant has no other means of iricome'than the salary she may be able to make (which, up until this time, was around $135 a month during the months the health of the child permitted her to work), and that in order to make even this salary she is compelled to expend the sum of $100 a month for the employment of a reliable person to supervise and care for this child during her working hours. As the trial judge has so ably put it: “In the present case we have a father who is able to pay any reasonable amount of alimony; we have a chi}d, a boy,
 
 *151
 
 five years of age this month; we have a mother, who has been granted the custody of the child, without objection of the father; the mother is penniless, without means for her own support, without a home of her own within which she can care for the child; and will have to take outside work in order to gain a living for herself ijc
 
 % >>
 

 In considering the plaintiff’s final argument, i. e., that an award of such a large amount has never before been granted by this court, it must again be remembered that we are not fixing the alimony in this case as an original proposition. It must also be remembered that the jurisprudence shows decisions of this kind are controlled by the facts and circumstances of the individual case and that they are never the same.
 

 For the reasons assigned, the judgment appealed from is affirmed.